UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LALL #612641,

       Petitioner,

                                                            File No. 1:09-CV-453

v.

                                                            HON. ROBERT HOLMES BELL

DAVID BERGH,

       Respondent.
_____/

**O P I N I O N**

On May 18, 2009, Petitioner David Lall filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) On January 2, 2013, Magistrate Judge Joseph G. Scoville issued a Report and Recommendation ("R&R") recommending that Petitioner's first and third grounds for habeas relief be denied but that the petition be granted on the ground that Petitioner's second trial for first-degree Criminal Sexual Conduct (CSC I) violated the collateral estoppel component of the Double Jeopardy Clause. (Dkt. No. 49.) This matter is before the Court on Respondent David Bergh's objections to the R&R. (Dkt. No. 50.)

**I.**

As discussed in more detail in the R&R, the state prosecution arose form allegations that Petitioner, a nurse, sexually assaulted Carolee Womack, an emergency patient. The prosecution alleged that after being ordered by a physician to deliver Phenergan to control the patient's nausea, Petitioner instead injected Womack with Valium, causing her to become

unconscious, at which time he sexually assaulted her by penetrating both her mouth and vagina. Petitioner was charged with CSC I (Count 1) and delivery of a controlled substance with the intent to commit criminal sexual conduct (Count 2).

Following a twelve day trial, the jury was instructed on both charges. For CSC I, the jury was instructed that the prosecutor was required to show that Petitioner sexually penetrated Womack under one of three sets of circumstances: (1) the offense was committed during the commission of a felony (in this case, the crime of delivery of a controlled substance with intent to commit CSC I); (2) the defendant caused personal injury to Womack and force or coercion was used to accomplish the sexual penetration; or (3) the defendant caused personal injury to Womack while she was mentally incapacitated or physically helpless. For delivery of a controlled substance with the intent to commit criminal sexual conduct, the jury was instructed that the prosecutor was required to show: (1) Petitioner knowingly delivered a controlled substance to Womack; (2) the controlled substance was Valium; (3) Petitioner did not have Womack's consent to deliver Valium; and (4) Petitioner delivered the Valium with the specific intent to engage or attempt to engage in CSC I.

The jury was only able to reach a unanimous verdict as to Count 2. The Court accepted the jury's verdict that Petitioner was not guilty of delivery of a controlled substance with intent to commit criminal sexual conduct. The Court declared a mistrial on Count 1, CSC I.

Petitioner then moved for dismissal of the CSC I charge on the basis of double

jeopardy. In the alternative, Petitioner moved to suppress all evidence related to the delivery of Valium on the ground of collateral estoppel. The trial court ruled that the Double Jeopardy Clause of the Fifth Amendment prohibited the state from retrying Petitioner on the CSC I count under the first possible theory–that he committed an act of sexual assault with penetration in conjunction with a felony. However, the Court concluded that the state was permitted to try Petitioner under the alternate theories of CSC I. As for collateral estoppel, the court held that there was no reasonable doubt that the jury's decision was based on a finding that Petitioner had not injected Valium into Womack. However, the trial court concluded that collateral estoppel did not bar the prosecution from introducing evidence that Petitioner had delivered Valium to Womack because the delivery of Valium was not an element of CSC I under the two remaining theories.

During the second trial, the prosecution focused on the third possible theory for CSC I: that Petitioner committed an act of sexual assault with penetration, causing personal injury to Womack while she was mentally incapacitated. The theory of the case was that Petitioner had sexual fantasies about a certain kind of woman coming into the emergency room and he made those fantasies a reality through a common scheme to deliver Valium to three women[1] without their consent in order to commit criminal sexual conduct. To show the requisite mental incapacitation, the prosecution argued that Petitioner injected Womack with Valium without her consent.

---

[1] Jessica Kelley and Lena Boyd had testified at the first trial that Petitioner had sexually abused them under similar circumstances, albeit without penetration. (*See* Dkt. No. 49, at 15-17.)

The jury was initially unable to reach a unanimous verdict. Before granting defense counsel's motion for a hung jury, the court read a hung-jury instruction and dismissed the jury for the evening. The following morning the jury resumed deliberations and returned a guilty verdict. On August 7, 2006, Petitioner was sentenced to imprisonment for 56 to 112 months. His direct appeal (which contained the same issues raised in his present habeas petition) was denied. The Michigan Supreme Court denied leave to appeal on January 9, 2009.

## II.

This Court makes a *de novo* determination of those portions of an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.*

## III.

Petitioner's habeas petition raised three grounds for relief: (1) the successive prosecution component of the Double Jeopardy Clause barred retrial; (2) collateral estoppel, as encompassed within the Double Jeopardy Clause, barred the prosecution from introducing evidence that he administered Valium to Womack without her consent; and (3) his Sixth and Fourteenth Amendment rights to an impartial jury were violated by the trial court's failure

to adequately inquire into juror communications and failure to grant a mistrial as a result of one of those communications.

The Magistrate Judge recommended the denial of the first and third grounds for relief. There have been no objections to this recommendation. The Court has reviewed these grounds for relief and concludes that the R&R correctly analyzes the issues and makes a sound recommendation. Accordingly, the Court will adopt the R&R's recommendation and deny the first and third grounds for relief.

The Magistrate Judge recommended that this Court grant Petitioner's habeas petition pursuant to the second ground for relief, and enter an unconditional writ barring Petitioner's retrial for CSC I. Respondent has raised two objections to the granting of the petition, and one objection to the unconditional nature of the recommended writ.

**A. Objections to Recommendation to Grant the Petition**

The first two objections relate to alleged Antiterrorism and Effective Death Penalty Act (AEDPA) violations in the R&R's analysis. The AEDPA "prevents federal habeas 'retrials'" and "ensure[s] that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. *Id.* This Court may consider only the "clearly established" holding, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

6

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

In this case, the trial court made the factual finding that by acquitting Petitioner on Count 2 the first jury necessarily found that Petitioner had not administered Valium to Womack without her consent. However, it reached the legal conclusion that collateral estoppel did not apply, erroneously relying on the same elements test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), instead of the clearly established law[2] on collateral estoppel set forth in *Ashe v. Swenson*, 397 U.S. 436 (1970). The court of appeals did apply *Ashe*, but reached a different factual conclusion than the trial court, concluding that

---

[2] Neither party objects to the R&R's conclusion that *Ashe* governs the collateral estoppel analysis in this case and should have been applied by the trial court.

7

the first jury could have acquitted Petitioner on Count 2 without necessarily finding that he had not administered Valium to Womack without her consent. On the basis of this contrary factual finding, the court of appeals also found that collateral estoppel was inapplicable.

The Magistrate Judge agreed with the trial court that the first jury necessarily had to have found that Petitioner had not administered Valium to Womack without her consent. Thus, because a finding of guilt for CSC I in the second trial under the theory of mental incapacitation required the second jury to decide an ultimate fact of which Petitioner had been acquitted by the first jury (the injection of Valium), the Magistrate Judge concluded that the collateral estoppel rule of *Ashe* barred the admission of evidence in the second trial about Petitioner's delivery of Valium to Womack. (Dkt. No. 49, at 58.)

### 1. Objection 1 - Failure to Give Proper Deference to Court of Appeals Decision

Respondent's first objection is that the Magistrate Judge failed to give the proper AEDPA deference to the Michigan Court of Appeals' adjudication of the collateral estoppel issue. In particular, Respondent alleges that the Magistrate Judge ignored the facts from the first trial that the court of appeals could have relied on when it rejected the issue.

According to the Supreme Court:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration

*Ashe*, 397 U.S. at 444. The Magistrate Judge concluded that the court of appeals' conclusion that collateral estoppel was not applicable was unreasonable because its factual analysis consisted solely of hypothetical speculation untethered to the evidence and arguments actually presented at trial, in direct contravention of *Ashe's* requirement that the "inquiry 'must be set in a practical frame and viewed with an eye to all circumstances of the proceedings.'" *Id.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)).

This Court agrees with the Magistrate Judge's analysis and finds the court of appeals' one paragraph factual analysis of the collateral estoppel issue conclusory and unsupported. However, it will address each of the facts highlighted by Respondent that were "ignored" by the Magistrate Judge.

First, Respondent argues that there were facts that the jury could have relied upon to conclude that Petitioner injected Womack with a non-Valium drug. However, nothing in the record would have allowed a reasonable jury to find that Petitioner delivered a drug to Womack that was not Valium or Phenergan. Valium was the only drug discussed at trial other than the prescribed drug of Phenergan. The "evidence" that Plaintiff contends would have allowed a reasonable jury to conclude that Petitioner delivered a non-Valium drug is either so insignificant as to be of no use to a reasonable jury or was introduced to prove that Petitioner injected Phenergan as prescribed. For example, the *only* mention of the possible injection of a drug other than Valium and Phenergan was a medical technologist's testimony that Womack's urine tested positive for benzodiazepine, which he said could have been

9

Valium or Librium or another fifteen drugs. (Dkt. No. 37, Tr. Vol. 2, at 165, 179.) No reasonable jury could take that isolated, vague testimony and conclude that Petitioner injected a non-Valium or non-Phenergan drug. Likewise, Respondent points to testimony that the victim complained about burning and came in and out of consciousness, both symptoms unrelated to the injection of Valium. However, Respondent ignores the fact that this testimony was offered to prove that *Phenergan* was actually injected as prescribed. Multiple witnesses testified that intense pain is common with the injection of Phenergan. (*Id.* at 130, 156, 207, 216), and that hallucinations (albeit not the same thing as coming in and out of consciousness) are a side effect of Phenergan (*Id.* at 131, 160-61). Most importantly, as the trial court made clear, no party contested the second element of Count 2, that the controlled substance *was Valium*. (Dkt. No. 49, at 43.)

Second, Respondent argues that facts were ignored that a reasonable jury could have relied upon to conclude that Petitioner developed the specific intent to penetrate Womack's mouth or vagina *after* he had injected her with Valium, either through a "wait and see" approach or an initial intent to only to engage in sexual touching. However, the Magistrate Judge directly addressed this issue, quoting the trial judge who found this argument "highly improbable":

> There was no focus on the timing of Defendant's intent to penetrate Complainant by either Plaintiff or Defendant during the trial. The jury instruction did not draw attention to the timing of Defendant's intent. During his opening statement and his final argument, Defendant made no such argument. As the trial judge, and through my observations of the jurors as well as the witnesses, I find the likelihood that the jury decided its not guilty verdict

10

> on a delay of the time when Defendant formed his intent to penetrate, or attempt to penetrate, as highly improbable.

(Dkt. No. 49, at 43.) Indeed, as the Magistrate Judge correctly noted, the Prosecution's entire theory of the case was that Petitioner hoarded Valium for the express purpose of administering it to vulnerable female patients so he could sexually penetrate them. Respondent's "facts" to support the jury possibly concluding otherwise are (a) the testimony of the other alleged victims regarding only sexual touching, (b) the lack of discussion throughout the trial of the timing of the intent, and (c) the "overwhelming evidence that Lall had access to Valium." (Dkt. No. 50, at 6-7.) But the testimony of the two other alleged victims was presented precisely to show that Petitioner had a common scheme of injecting patients with Valium so he could commit criminal sexual conduct. No argument was made that this evidence somehow showed that Petitioner's intent in this case developed after the injections of Valium. Additionally, Respondent's contention that a reasonable jury might have acquitted Petitioner on account of the timing of an intent to penetrate, a defense *never broached* at trial by Petitioner, is not believable. Lastly, the fact that Petitioner had access to Valium is not evidence that his intent to sexually penetrate arose after injecting Valium.

In conclusion, the Court finds that the Magistrate Judge's analysis was not only incredibly detailed and thorough, but also manifestly correct. It also agrees that the trial court's factual analysis was correct, and that the trial judge reached the only reasonable conclusions that could be drawn from the record of the first trial. Additionally, the Court agrees that the court of appeals' contrary findings were both fantastic and utterly unsupported by the record.

11

In reaching these conclusions, the Magistrate Judge applied the AEDPA deference owed to the Michigan Court of Appeals. This is not a situation where the Magistrate Judge or this Court is attempting to substitute its judgment for the court of appeals' judgment or where "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Both the Magistrate Judge and this Court have started with the presumption that the court of appeals' factual analysis was correct. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). But the conclusion that the court of appeals' analysis was unreasonable pursuant to 28 U.S.C. § 2254(d) is inescapable. The court of appeals, in its terse dismissal of the collateral estoppel claim, did not point to any evidence on the record (because there was none) to support its speculation. By focusing on hypothetical bases for the jury's decision that were totally divorced from the evidence presented at the trial, the court of appeals directly ignored the Supreme Court requirement that "[t]he [collateral estoppel] inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." *Ashe*, 397 U.S. at 444. Thus, the Court agrees that the court of appeals unreasonably applied *Ashe* to the facts of this case.

### 2. Objection 2 - Improper Deference to Trial Court

Independently of his determination that the court of appeals' factual analysis was unreasonable, the Magistrate Judge concluded that the court of appeals also acted

12

unreasonably by conducting a *de novo* review rather than giving deference to the trial court's factual findings. *Foster v. Wolfenbarger*, 687 F.3d 702, 708-09 (6th Cir. 2012); *Leonard v. Michigan*, 256 F. Supp. 2d 723, 732 (W.D. Mich. 2003) (Enslen, J.) (" It was unreasonable for the court of appeals to disregard the statements of the trial court which had the benefit of presiding over the hearings and trial."). The Magistrate Judge noted that the court of appeals erroneously cited the standard applied to collateral estoppel determinations in nonconstitutional settings. Respondent raises two arguments in objection: (a) AEDPA makes clear that the state court decision to be given deference to is the state court's last reasoned adjudication of a claim, which is the court of appeals' determination in this case; and (b) the Magistrate Judge overstated the proposition in *Foster*.

Respondent is correct that, to the extent the Magistrate Judge deferred to the findings of the trial court judge (Dkt. No. 49, at 57), it would be error in some circuits. "When there are conflicting findings by state courts, we believe that according proper deference requires us to accept the version reached by the higher court." *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996); *see also Rutherford v. Crosby*, 385 F.3d 1300, 1308 (5th Cir. 2004) ("To the extent of any inconsistency in fact findings or other matters, the Florida Supreme Court is supreme over that state's trial courts."). However, the Court is unaware of similar authority in the Sixth Circuit. Instead, there are district court decisions in this circuit holding that deference may be given to both the trial court and appellate court. *See Leonard v. Michigan*, 256 F. Supp. 2d 723, 732 (W.D. Mich. 2003) ("It was unreasonable for the court of appeals

13

to disregard the statements of the trial court which had the benefit of presiding over the hearings and trial. This Court is persuaded by the conclusions of the trial court and believes they should be given due deference in deciding this matter."); *Latta v. Hoffner*, No. 2:10-CV-13546, 2012 WL 6966628, at *9 (E.D. Mich. Aug. 7, 2012) ("Judicial deference must also be given to both the trial court, respecting the factfinder's determinations, and to the higher court if they decided the case on its merits."). Thus, the Court cannot say that the Magistrate Judge was in error.

In any case, even if this Court did not give deference to the trial court's findings, it would reach the same conclusion. The Court agrees with the Magistrate Judge that it is "patently clear from the transcript of the first trial" that the trial judge's factual conclusions were the only reasonable conclusions that could be drawn and are "inescapable on the trial court record." (Dkt. No. 49, at 50, 57.) As fully discussed above, there was absolutely nothing in the record that would have allowed a reasonable jury to reach the hypothetical conclusions relied upon by the court of appeals. Consequently, the Magistrate Judge found those conclusions utterly devoid of support on the record and unreasonable in a manner fully consistent with 28 U.S.C. § 2254(d).

Second, the Magistrate Judge did not overstate *Foster*. While *Foster* involved a different factual scenario – the constitutional effectiveness of counsel – it did not just hold that a lower court's findings should be taken into consideration by a court of appeals, but explicitly stated that the court of appeals should apply deference to such findings:

14

> We give due deference to the conclusions of the trial judge on the effectiveness of counsel, because "[t]he judge, having observed the earlier trial, should have an advantageous perspective for determining the effectiveness of counsel's conduct and whether any deficiencies were prejudicial." *Massaro v. United States*, 538 U.S. 500, 506, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). The trial judge here heard the testimony of both Foster's counsel and Daniels, and based on that testimony found that Foster's counsel should have pursued the alibi theory. While the trial court's ruling is not a dispositive basis for granting relief, it provides support for the district court's rationale and our own conclusion. *See Leonard v. Michigan*, 256 F.Supp.2d 723, 732 (W.D. Mich. 2003) (giving deference to the state trial court's findings on trial counsel's deficiencies and deeming the state appellate court "unreasonable" for not doing the same).

*Foster*, 687 F.3d at 708-09.

The Court recognizes that "[t]he *application* of legal doctrines, such as res judicata and collateral estoppel" is "a question of law subject to de novo review." *Estes v. Titus*, 751 N.W.2d 493, 496 (Mich. 2008) (emphasis added); *accord Greenbrooke Parkhomes Condo. Ass'n v. Household Fin. Corp. III*, No. 301516, 2012 WL 833247 (Mich. Ct. App. Mar. 13, 2012); *Barrow v. Pritchard*, 597 N.W.2d 853, 855 (Mich. Ct. App. 1999). However, while the legal application of these doctrines is subject to de novo review, factual findings made when undertaking the necessary analysis for these doctrines are not subject to de novo review. This is a well-established proposition that is incorporated into Michigan's court rules and its case law. "Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." Mich. Ct. Rule 2.613(C); *see also, e.g., Flynn v. Korneffel*, 547 N.W.2d 249, 250 n.5

15

(Mich. 1995) ("A trial court's findings of fact are subject to considerable deference on review."); *Smith v. Mich. State Acc. Fund*, 267 N.W.2d 909, 911 (Mich. 1978) ("An appellate court must give due deference to the findings of a trial court."); *Berger v. Berger*, 747 N.W.2d 336, 342 (Mich. Ct. App. 2008) ("We defer to the trial court's superior fact-finding ability, MCR 2.613(C), and are not left with a definite and firm conviction that a mistake was made when viewed in light of the whole record."); *People v. Galloway*, 675 N.W.2d 883, 886 (Mich. Ct. App. 2003) ("We review the trial court's findings of fact for clear error."); *People v. Zahn*, 594 N.W.2d 120, 123 (Mich. Ct. App. 1999) ("The deferential 'clear error' standard is the appropriate standard of review for findings of fact because the trial court is usually in a superior position to assess the evidence."). Thus, despite the objections to the contrary, the Magistrate Judge did not come to the conclusion that the court of appeals owed deference to the factual findings of the trial court by transforming an ambiguous statement in *Foster* into an "over-arching proposition." (Dkt. No. 50, at 12.)

The court of appeals, consistent with this case law, could have paid deference to the trial court's factual findings yet reached a contrary decision. Instead, the court of appeals completely ignored the trial court's factual findings despite the fact that they directly contradicted the court of appeals' own factual findings and included a finding that the positions ultimately adopted by the court of appeals were "raw speculation." The Court agrees with the Magistrate Judge that doing so directly contravened *Ashe*'s requirement that "the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical

16

and archaic approach of a 19th century pleading book, but with realism and rationality." 397 U.S. at 444. Thus, it was not error for the Magistrate Judge to conclude that, in addition to acting unreasonably by relying on hypothetical speculation untethered to the evidence and arguments actually presented at trial in direct contravention of *Ashe*, the court of appeals also acted unreasonably and in contravention of *Ashe* by failing to give deference to the trial court's factual findings.

**B. Objection to the Unconditional Nature of the Recommended Writ**

Respondent's last objection is that the Magistrate Judge recommended an unconditional writ barring Petitioner's retrial despite the fact that there was more than sufficient evidence to show that Petitioner sexually violated the victim while she was physically helpless even without evidence that Petitioner injected her with Valium. The Court disagrees with Respondent. This theory was not presented at either the first or second trial and is unsupported by the facts presented at those trials. The isolated facts that Womack vomited multiple times on her way to the hospital, was dizzy when she put on her gown at the hospital, had Phenergan in her system, and had not slept for 24 hours, (Dkt. No. 50, at 14-15), are insufficient to establish physical helplessness in the Court's opinion. Indeed, the Court is not convinced that a viable prosecution exists under any theory which does not rely on the argument that Petitioner injected Womack with Valium.

Additionally, the Court notes that Petitioner is currently out on parole, having served the minimum sentence for CSC I. Despite Respondent's argument to the contrary, this fact

is not moot. A criminal retrial for CSC I, when Petitioner has already served the minimum sentence for CSC I, is not warranted. Respondent argues that the state may wish to retry Petitioner for the sole purpose of keeping him on the Michigan Sex Offender Registry. (Dkt. No. 50, at 16.) However, Respondent presents no law to support the argument that this hypothetical justification for bringing the CSC I charge a third time warrants a conditional writ in a situation, like the present one, where the minimum sentence for the charge has already been served.

District courts "favor conditional grants, which provide states with an opportunity to cure their constitutional concerns . . . ." *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006). However, the Court may grant an unconditional writ "in situations where the nature of the error is simply incurable." *Id*. Given the lack of a viable prosecution under a theory that does not involve the injection of Valium and the fact that Petitioner has already served the minimum sentence for CSC I, the Court agrees with the Magistrate Judge that the nature of the error in this case is not curable.

An order consistent with this opinion will be entered.


Dated: <u>March 14, 2013</u>               /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE